IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00826-REB-KLM

UNITED STATES ex rel. ANTHONY HANLON,
UNITED STATES ex rel. LINDA DOLLAR, and
STATE OF COLORADO ex rel. RELATORS,

      Plaintiffs,

v.

COLUMBINE MANAGEMENT SERVICES, INC., a Colorado corporation doing business
as COLUMBINE HEALTH SYSTEMS, and
POUDRE VALLEY HEALTH CARE, INC., a Colorado nonprofit corporation doing business
as POUDRE VALLEY HEALTH SYSTEM,

      Defendants.

UNITED STATES,

      Interested Party.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant Poudre Valley Health Care, Inc.'s

**Motion to Dismiss** [#60];[1] on Defendant Columbine Management Services, Inc.'s **Motion**

**to Dismiss** [#62]; and on Plaintiffs' **Motion to Amend Complaint and Join a Party** [#82]

(the "Motion"). Plaintiffs filed Responses [#65, #66] in opposition to the Motions to Dismiss,

and Defendants filed Replies [#70, #71]. Defendants filed Responses [#87, #88] in

opposition to the Motion to Amend, and Plaintiffs filed a Reply [#89]. All three Motions have

---

[1]  "[#82]" is an example of the convention the Court uses to identify the docket number
assigned to a specific paper by the Court's case management and electronic case filing system
(CM/ECF). This convention is used throughout this Recommendation.

-1-

been referred to the undersigned for a recommendation.[2]  *See* [#61, #63, #83].  The Court has reviewed the Motions, Responses, Replies, the case file, and the applicable law, and is fully advised in the premises.  For the reasons set forth below, the Court **recommends** that the Motion to Amend [#82] be **DENIED**, and that the Motions to Dismiss [#60, #62] be **GRANTED**.

## I.  Background

The Court first addresses the Motion to Amend [#82], in which Plaintiffs seek to add one additional defendant to this matter and also to add a variety of new allegations to the current Complaint.  *See* [#82-1].  On October 23, 2015, the Court extended the deadline for joinder of parties and amendment of pleadings to November 6, 2015. [#81] at 6-7.  Accordingly, Plaintiffs' Motion to Amend [#82], which was filed on November 6, 2015, was timely filed.

The Court has discretion to grant parties leave to amend their pleadings.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be 'freely given.'"  *Id.* (quoting Fed. R. Civ. P. 15(a)(2)).

---

[2] A magistrate judge may issue orders on nondispositive motions only.  *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1461, 1462-63 (10th Cir. 1988).  Whether motions to amend are dispositive is an unsettled issue.  *Chavez v. Hatterman*, No. 06-02525-WYD-MEH, 2009 WL 82496, at *1 (D. Colo. Jan. 13, 2009) (citing cases).  When an order denying a motion to amend removes a defense or claim from the case it may be dispositive.  *Cuenca v. Univ. of Kan.*, 205 F. Supp. 2d 1226, 1228 (D. Kan. 2002).  For the purposes of resolving the present Motion to Amend, the Court will assume that the issue is dispositive and requires a recommendation.

Potential prejudice to a defendant is the most important factor in considering whether a plaintiff should be permitted to amend the complaint. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006). "Courts typically find prejudice only when the [proposed] amendment unfairly affects the defendants in terms of preparing their defense to [claims asserted in the] amendment." *Id.* (quotation omitted).

Defendants argue that the proposed amendments to Plaintiffs' Proposed Amended Complaint are futile. *Responses* [#87, #88]. A motion for leave to amend may be denied on the basis of futility. *Foman*, 371 U.S. at 182. An amendment is futile if it would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Innovatier, Inc. v. CardXX, Inc.*, No. 08-cv-00273-PAB-KLM, 2010 WL 148285, at *2 (D. Colo. Jan. 8, 2010) (citing *Bradley v. Val–Mejias*, 379 F.3d 892, 901 (10th Cir. 2004)). Defendants argue that each of the three claims asserted by Plaintiffs fails under the standards set by Fed. R. Civ. P. 12(b)(1) and (6). *See Response* [#87, #88]. The Court examines each claim in turn after reciting material facts from the Proposed Amended Complaint.

The following facts are alleged by Plaintiffs in the proposed Amended Complaint [#82-1]. Plaintiffs are individuals employed by Rehabilitation and Nursing Center of the Rockies, which is a business competitor of Defendants. *Proposed Am. Compl.* [#82-1] ¶ 1. Defendant Columbine Management Services, Inc. ("Columbine") is a Colorado corporation doing business as Columbine Health Systems with its principal place of business located in Fort Collins, Colorado. *Id.* ¶ 3. Defendant Poudre Valley Health Care, Inc. (the "Hospital") is a Colorado nonprofit corporation doing business as Poudre Valley Health System with its principal place of business also located in Fort Collins, Colorado. *Id.* ¶ 4. Plaintiffs allege that a contractual joint venture was formed by Defendants Columbine and

the Hospital in 2003 and that this joint venture is named Centre Ave. Health and Rehab Facility, LLC ("Centre Ave."). *Id.* ¶¶ 5, 9. Centre Ave. is the proposed third Defendant in the Proposed Amended Complaint.

Prior to forming Centre Ave., Defendant Columbine was an owner/operator of three nursing homes and five health care referral businesses. *Id.* ¶ 10. Defendant Columbine's joint venture with the Hospital was established for the purpose of operating another nursing home facility, i.e., Centre Ave., and at least one purpose of forming Centre Ave. was allegedly to influence referrals from the Hospital for remuneration. *Id.* ¶ 12. Centre Ave. itself is a collaboration of two entities: Centre Avenue Rehab Real Estate, LLC, which owns the real estate, and Centre Avenue Health & Rehab Facility, LLC, which is the operating entity of Centre Ave. *Id.* ¶ 13. The Hospital wholly owns Lakota Lake, LLC, which in turn owns fifty percent of Centre Avenue Health & Rehab Facility, LLC.[3] *Id.* ¶ 14.

Throughout the events underlying this lawsuit, the Hospital has been the only hospital in the Fort Collins area. *Id.* ¶ 15. The Hospital is paid by the federal government for providing care to patients who are insured by Medicare or Medicaid. *See, e.g.*, *id.* ¶ 19 (stating that the Hospital is compensated by Medicare for its discharge planning services). The Hospital employs people who deliberately steer potential nursing home patients towards the nursing home in which the Hospital has a financial interest, i.e., towards Centre Ave. *See id.* (stating that the Hospital controls the referral process through physicians and discharge planners). Defendant Columbine and/or Centre Ave. also employ nurses at the Hospital who steer these patients towards Centre Ave. *Id.* ¶¶ 20-21. However, the Hospital does not permit other nursing homes to try and steer patients their way. *Id.* ¶ 24 (stating

---

[3] Plaintiffs do not further explain the ownership framework of these entities.

that the other community nursing homes facilities are prohibited from having marketing staff in the hospital unless invited, which never happens).

The vast majority of hospitalized patients needing nursing home care go to Centre Ave. because of these practices. *Id.* ¶ 16 (stating that over the last ten years, the Hospital has referred between 7,500 and 8,500 Medicare A patients and private pay patients to Centre Ave), ¶ 17 (stating that the Hospital only refers a few dozen Medicare A patients to the other five nursing home facilities in Fort Collins, and that these are generally patients requiring excessive care for the amount of treatment costs reimbursed by Medicare). Centre Ave. also bills the federal government for the care of these patients. *Id.* ¶ 19 (stating that Centre Ave. and Defendant Columbine are compensated by Medicare for intake coordination), ¶ 25 (stating that Centre Ave. billed Medicare for 16,704 days of health care under the Medicare A program in 2010). The rates charged to the government by Centre Ave. are significantly higher than the rates charged by the competitor nursing homes. *Id.* ¶ 26 (stating that Centre Ave. charges an average daily Medicare A reimbursement rate almost $200.00 per day higher than the average of the other five nursing homes in the Fort Collins area). Thus, because of the Hospital's financial interest in Centre Ave., the Hospital receives money from the government both when the patients are in the Hospital's care as well as when the patients are in the care of Centre Ave.

In return for the patient referrals from the Hospital, Centre Ave. then refers patients to other businesses which are financially connected to the Hospital and to Defendant Columbine. *Id.* ¶ 31 (stating that Centre Ave. refers patients to other health care services co-owned by or otherwise related to the Hospital and Defendant Columbine, including Poudre Columbine Home Health Care, Poudre Columbine Infusion Therapy, Columbine

Oxygen, Columbine DME, and Columbine Pharmacy).  These other health care businesses pay Centre Ave. for these referrals, which creates a financial benefit to the Hospital and Defendant Columbine as well.  *Id.* (stating that Defendants are giving and receiving further remuneration for these referrals).  Defendant Columbine, the Hospital, and Centre Ave. have all been substantially enriched as a result of this referral system.  *Id.* ¶¶ 37, 40, 44.

As a result of these allegations, Plaintiffs assert three claims for relief: (1) violation of the Antikickback Statute and conspiracy to violate the Antikickback Statute, 42 U.S.C. § 1320a-7b; (2) violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729; and (3) violations of the Colorado False Claims and Antikickback Statutes, Colo. Rev. Stat. § 25.5-4-301 through 306, also known as the Colorado Medicaid False Claims Act.  *Id.* ¶¶ 46-67.  Plaintiffs seek damages as a result of these alleged violations.  *Id.* at 12.

## II.  Standard

### A.    Fed. R. Civ. P. 12(b)(1)

Subject matter jurisdiction may be challenged by a party or raised sua sponte by the court at any point in the proceeding.  *E.g.*, *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 16-19, (1951); *Harris v. Illinois-California Express, Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982); Fed. R. Civ. P. 12(h)(3).  A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack.  When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *Holt v. United States*, 46 F.2d 1000, 1002 (10th Cir. 1995).  When reviewing a factual attack on a complaint supported by affidavits or other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *Id.* at 1003.

Rule 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it.  Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)).  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1).  Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed. *F. & S. Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

## B.     Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) Motion to Amend, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192 .

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

### III.  Analysis

#### A.    Claim One

Under Claim One, Plaintiffs assert that all Defendants violated the Antikickback Statute, 42 U.S.C. § 1320a-7b, and conspired to violate the Antikickback Statute. In support of this claim, Plaintiffs argue that, by establishing their joint venture, Defendant Columbine

and the Hospital conspired to influence referrals for remuneration. *Proposed Am. Compl.* [#82-1] ¶ 47.   In short, Plaintiffs state that Defendants referred Medicare and Medicaid patients to Centre Ave. to obtain payments for items and services under federal health care programs. *Id.* ¶ 53.   The United States and the State of Colorado have allegedly been damaged in an amount equal to the Medicare and Medicaid payments made to Centre Ave. from the Hospital's referrals over the last ten years, as Defendants allegedly received a kickback for every referral made, which resulted in total payments in excess of $100 million. *Id.* ¶ 55.

As Defendants point out, "The Anti-Kickback statute is a criminal statute and does not provide a private right of action." *Response* [#87] at 8 (quoting *Medtronic Navigation, Inc. v. Brainlab Medizinische Computersystems GMBH*, No. 98-CV-1072-RPM, 2005 WL 1661081, at *3 (D. Colo. July 14, 2005)).   In the Reply, Plaintiffs concede this point but argue that they "are not pursuing a straight criminal violation of the [Anti-Kickback Statute]. [Plaintiffs] are pursuing False Claims Act claims that are false because of violations of the [Antikickback Statute].   The False Claims Act expressly provides civil actions for false claims." [#89] at 2 (citing 31 U.S.C. § 3730).

The problem with Plaintiffs' recitation of the claim in their Response is that the Proposed Amended Complaint does not support this interpretation. *See Mobley*, 40 F.3d at 340.   The claim's title only refers to the Antikickback Statute with no mention of the FCA. *See* [#82-1] at 8.   Nowhere in the statement of the claim is the FCA mentioned—only the Antikickback Statute.   Thus, the Proposed Amended Complaint certainly is not clear enough to put Defendants on notice that this claim is (apparently) intended to be an FCA claim.   In other words, the Proposed Amended Complaint is plainly deficient because it fails to put

Defendants on notice of the claim against them.  The Court and Defendants should not be forced to play a guessing game as to whether Plaintiffs have asserted a particular claim. *See, e.g.*, *Carbajal v. Morrissey*, No. 12-cv-03231-REB-KLM, 2014 WL 1301532, at *13 (D. Colo. Mar. 31, 2014).  Because the claim as written is based on a statute that does not provide a private right of action, *see Medtronic Navigation, Inc.*, 2005 WL 1661081, at *3, amendment is futile.

Even if Plaintiffs were permitted to properly plead that the Antikickback Statute is the foundation for a separate FCA claim, they have also failed to put Defendants and the Court on notice of which part or parts of the Antikickback Statute were allegedly violated.[4]  The Antikickback Statute encompasses a range of activity, including: (1) making or causing to be made false statements or representations, (2) illegal remunerations, (3) false statements or representations with respect to condition or operation of institutions, (4) illegal patient admittance and retention practices, and (5) violation of assignment terms.  42 U.S.C. § 1320a-7b(a)-(e).  Plaintiffs appear to be at least partially asserting violations in connection with illegal remuneration, of which the Antikickback Statute prohibits four separate types of conduct.  42 U.S.C. § 1320a-7b(b)(1)(A)-(2)(B).  Are Plaintiffs claiming that Defendants violated all four of these provisions or merely one of them?  It is not for the Court or Defendants to decipher Plaintiffs' Complaint.  *See Carbajal*, 2014 WL 1301532, at *13. Rather, it is Plaintiffs' burden to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Plaintiffs have failed to do so here.  In the absence of identifying a specific cause of action and explaining Defendants' violation of the statute, the Court cannot find that Plaintiffs have a stated a claim supported

_____

[4]  Plaintiffs' briefs [#82, #89] also fail to clarify this issue.

by allegations of illegal conduct sufficient to withstand a motion to dismiss.   At most, Plaintiffs have provided allegations describing conduct which, while potentially anti-competitive, is not necessarily illegal.

Accordingly, the Court **recommends** that the Motion to Amend [#82] be **denied** to the extent it requests to amend this claim.

## B.    Claim Two

In Claim Two, Plaintiffs assert that all Defendants violated the FCA, 31 U.S.C. § 3729.  "The FCA covers all fraudulent attempts to cause the government to pay out sums of money." *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1167 (10th Cir. 2010) (internal quotation marks omitted).  Section 3730(b) of the FCA allows an individual plaintiff to sue on behalf of the government by filing a qui tam action.  When a qui tam action is filed, the government may intervene and take over the plaintiff's case.  31 U.S.C. § 3730(b)(2).  If the government declines to intervene, as it has here, *see* [#22], the plaintiff/relator may proceed while sharing any recovery with the government.  31 U.S.C. § 3730(c)(3).  FCA claims may be categorized as follows:

> The Tenth Circuit has explained that the FCA "recognizes two types of actionable claims—factually false claims and legally false claims." *United States ex rel. Connor v. Salina Reg'l Health Ctr.*, 543 F.3d 1211, 1217 (10th Cir. 2008).   In a factually false case, "proving falsehood is relatively straightforward: A relator must generally show that the payee has submitted an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." *Id.* (internal quotation omitted).  In contrast, when the relator's claim is based on an alleged legal falsehood, "the relator must demonstrate that the defendant has certified compliance with a statute or regulation as a condition to government payment, yet knowingly failed to comply with such statute or regulation." *Id.* (internal quotation and alteration omitted).
>
> Legally false certification claims "can rest on one of two theories—express false certification, and implied false certification." *Id.* "An express false certification theory applies when a government payee falsely certifies

compliance with a particular statute, regulation or contractual term, where compliance is a prerequisite to payment." *Id.* (internal quotation omitted). "This promise may be any false statement that relates to a claim, whether made through certifications on invoices or any other express means." *Id.* (emphasis added). Express false certification claims are actionable under either § 3729(a)(1) or (2). *Lemmon*, 614 F.3d at 1168.

In contrast, under an implied false certification theory, "courts do not look to the contractor's actual statements [in relation to a claim]; rather, the analysis focuses on the underlying contracts, statutes, or regulations themselves to ascertain whether they make compliance a prerequisite to the government's payment." *Conner*, 543 F.3d at 1217; *see also Lemmon*, 614 F.3d at 1170 (explaining that "implied-false-certification claims do not involve—let alone require—an explicit certification of regulatory compliance"). "[T]he key attribute of implied false certification claims—and what most clearly differentiates them from express-false-certification claims—is that the payee's request for payment lacked an express certification." *Lemmon*, 614 F.3d at 1169. "[T]he pertinent inquiry for [implied false certification] claims is not whether a payee made an affirmative or express false statement, but whether, through the act of submitting a claim, a payee knowingly and falsely implied that it was entitled to payment." *Id.* Implied false certification claims are only actionable under § 3729(a)(1), and not § 3729(a)(2), because an implied false certification theory "do[es] not require courts to examine a payee's statements to the government." *Id.* at 1168.

*United States ex rel. Sanchez-Smith v. AHS Tulsa Reg'l Med. Ctr.*, 754 F. Supp. 2d 1270, 1284-85 (N.D. Okla. 2010).

Plaintiffs assert that Defendants presented or caused to be presented false or fraudulent claims, or made fraudulent statements to the government, in that Defendants violated conditions of participation in the Medicare program and/or violated conditions of payment for Medicare reimbursement[5] by (1) steering the Hospital's patients to Centre Ave, and (2) failing to disclose post-hospital care providers in which it has a financial interest. *Proposed Am. Compl.* [#82-1]  ¶¶ 58-60.  They also state that Defendants did so knowingly, or did so with deliberate ignorance or reckless disregard of the truth or falsity of the

_____

[5]  The Court discusses these "conditions of participation" in greater detail below.

statements made.  *Id.* ¶ 61.  Plaintiffs aver that Defendants made statements which would have been material to the government's determination to pay Defendants; in other words, Defendants failed to advise the government that there were kickbacks associated with the Medicare/Medicaid claims.  *Id.* ¶ 62.  Plaintiffs believe that the United States has been damaged in an amount equal to the difference between the amount that was paid to Defendants by Medicare and Medicaid over the last ten years, versus the amount that should have been paid by Medicare and Medicaid over this period, i.e., approximately $3.3 million per year, or $33 million dollars over the last ten years.  *Id.* ¶ 63.

Plaintiffs assert that their FCA claim "is a certification claim" because the Hospital "steered patients—a violation of patient choice, and now a 'condition of payment.'"  *Reply* [#89] at 5.  Plaintiffs do not label Claim Two as a certification claim in the Proposed Amended Complaint.  *See* [#82-1] at 10-11.  Rather, they clarified that this claim is a certification claim in the Reply.  *See* [#89] at 5.  Importantly, the Court has been unable to find any clear statement by Plaintiffs indicating whether they are attempting to pursue an implied or an express certification claim.

Defendants argue that Plaintiffs' FCA claim is futile because it fails to meet the heightened pleading standard of Fed. R. Civ. P. 9(b).  *Response* [#87] at 10-11; *Response* [#88] at 4-7; *see Lemmon*, 614 F.3d at 1167 (discussing the Rule 9(b) standard in context of the FCA).  This rule requires plaintiffs alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake."  "Rule 9(b) does not require that a complaint set forth detailed evidentiary matter as to why particular defendants are responsible for particular statements, or that the allegations be factually or legally valid. Instead, Rule 9(b) requires that the pleadings give notice to the defendants of the fraudulent

statements for which they are alleged to be responsible." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1253 (10th Cir. 1997) (citations omitted).

Plaintiffs do not provide specifics regarding the "conditions of participation" mentioned in the Proposed Amended Complaint by directing the Court's attention to a specific statutory or regulatory requirement or by attaching (or at least further describing) a document in which these conditions of participation can be found.   In the Reply, Plaintiffs simply cite to 42 C.F.R. § 482.43, which provides rules that hospitals must follow in connection with their discharge planning services.   *Reply* [#89] at 5.   The two alleged violations recited by Plaintiffs are that Defendants steered the Hospital's patients to Centre Ave and, in addition, failed to disclose to patients which options were post-hospital care providers in which Defendants had a financial interest.   *Proposed Am. Compl.* [#82-1] ¶¶ 59-60.   Based on careful review of the regulation, it contains no language which prohibits steering patients towards certain nursing home facilities, so long as the patients are informed of the nursing home options in their geographic region.   *See* 42 C.F.R. § 482.43(c)(6).   The Proposed Amended Complaint contains no allegations that Defendants have failed to do this.   To the extent Plaintiffs assert that Defendants failed to disclose their financial interest in certain post-hospital care providers, they appear to be relying on 42 C.F.R. § 482.43(c)(8).   *See Reply* [#89] at 5; *Proposed Am. Compl.* [#82-1] at 60.   The first issue here is Plaintiffs' failure to mention this regulation in the Proposed Amended Complaint, as well as Plaintiffs' failure to actually make this specific argument in the briefs.   Regardless, their conclusory statement fails to provide any of the specifics necessary to meet the heightened pleading standard of Fed. R. Civ. P. 9(b), as the Court next discusses.

In the context of the FCA, a pleading must "show the specifics of a fraudulent scheme

and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme." *Lemmon*, 614 F.3d at 1172 (citations omitted). Plaintiffs cannot rely on general allegations about a fraudulent scheme under the FCA to satisfy Rule 9(b)'s heightened pleading requirement. *United States ex rel. Sikkenga*, 474 F.3d 702 (10th Cir. 2006). Rather, the plaintiffs are required to "tie a [ ] specific claim" to their allegations of a fraudulent scheme. *Id.* at 728 n.34. For example, Judge Brimmer recently held in *United States ex rel. Fowler v. Evercare Hospice, Inc.*, No. 11-cv-00642-PAB-NYW, 2015 WL 5568614, at *9 (D. Colo. Sept. 21, 2015), that the plaintiff satisfied the Rule 9(b) requirement in an FCA certification claim:

> The government identifies six patients, who it refers to as LH, RS, DH, VB, LG, and ZF, each of whom spent considerable time in hospice care and each of whose records allegedly did not support a terminally ill prognosis. The complaint contains detailed information about each patient's condition and the clinical findings in their records that tend to show that their terminal prognosis was not supported. Evercare does not defend these patients' specific certifications. Instead, Evercare argues that the government's allegations in each case merely reflect a different medical judgment than the certifying physician. The Court has already rejected this argument. Evercare rightly points out that, if the complaint was based entirely on disagreements with Evercare's certifying physicians in specific cases, the government's references to these six patients would be insufficient to state a claim. The government's allegations are not so limited, however. As the Court has already found, the government has plausibly alleged that Evercare adopted a policy that resulted in widespread over-certification of patients as hospice-eligible. The Court finds that the medical records of the six patients highlighted in the complaint provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme.

(internal citations and quotation marks omitted).

In *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d at 1172, the Tenth Circuit Court of Appeals held that the plaintiffs met the 9(b) standard on their FCA claims:

> Plaintiffs' FCA claims provid[ed] factual allegations regarding the who, what,

when, where and how of the alleged claims. With regard to the *who*, Plaintiffs alleged the names and positions of Envirocare employees who observed the contract-and-regulation-breaching activity, the names of the Envirocare supervisors to whom they reported, and the names of the Envirocare employees responsible for submitting the false claims to the Government. Addressing the *what*, Plaintiffs alleged a series of contractual and regulatory breaches, pointing to specific obligations that Envirocare breached. For contractual violations, Plaintiffs listed the contracts that were purportedly violated. They also listed payment requests submitted, including the date of submission, the amount sought, and where applicable the language of the express certification contained in each request. In pleading the *when*, Plaintiffs documented the dates on which specific violations took place and the dates on which payment requests were submitted. For the *where*, Plaintiffs provided the location of the waste disposal site for the alleged violations—including, at times, the specific site area where the violations occurred. Finally, with regard to the *how*, Plaintiffs included extensive factual detail regarding how the violations occurred, adding, in many instances, the conduct that led to the violation, the reason the result constituted a violation, and a description of the effect of the violation. Plaintiffs also offered a detailed description of Envirocare's alleged efforts to conceal the violations, including, for example, the names of the Envirocare supervisors who instructed one Plaintiff to stop documenting violations.

(internal citations omitted) (emphasis in original).

Plaintiffs here, however, do not tie even one specific claim to the alleged fraudulent activity of Defendants. In fact, the Court has been unable to find any case from any court within the Tenth Circuit which has permitted an FCA claim to proceed without more specifics than those provided by Plaintiffs.[6] Citing to *Lemmon*, Plaintiffs argue that "where there is a significant likelihood that a claim has been submitted, it is not fatal that a complaint does not identify a specific claim." *Reply* [#89] at 10 (citing 614 F.3d at 1170). While this may be true, Plaintiffs are nevertheless required to provide more detail than they have here. As demonstrated by the Court's recitation of Plaintiffs' allegations above, Plaintiffs have

---

[6] Plaintiffs provide an in-depth discussion of *United States ex rel. Todd Heath v. AT&T, Inc.*, 47 F. Supp. 3d 42 (D.D.C. 2014). *See Reply* [#89] at 5-8. While *Heath* is on point, it reflects a different standard from that clearly articulated in applicable Tenth Circuit precedent.

provided far less specific information than did the plaintiffs in *Lemmon*.

Prior to discussing the Rule 9(b) heightened pleading standard, the Tenth Circuit in *Lemmon* discussed the 12(b)(6) minimum threshold of allegations necessary to state an FCA certification claim. *See* 614 F.3d at 1171 ("Though Plaintiffs have stated legally sufficient claims, they were also required to comply with Rule 9(b)."). Regarding Rule 12(b)(6), the Tenth Circuit stated:

> To state viable implied-false-certification claims, Plaintiffs' third amended complaint needed to contain sufficient factual allegations to show that Envirocare knowingly submitted legally false requests for payment to the government, that the government paid the requests and that, had the government known of the falsity, it may not have paid. While Plaintiffs were not required to prove their case in the complaint, they needed to give enough facts to show that relief was plausible. The third amended complaint contained sufficient factual allegations to support Plaintiffs' implied-false-certification claims. First, they documented a series of instances in which they personally observed Envirocare violate its contractual and statutory obligations. For the alleged violations, Plaintiffs detailed the violative activity, the regulation or contractual provision violated, the date on which the alleged violation occurred, and the Plaintiff that witnessed or, at Envirocare's direction, participated in the activity. Next, Plaintiffs explained how Envirocare was aware of the violations, listing specific instances in which Plaintiffs documented and/or informed their superiors of the violations. With regard to government payments, Plaintiffs provided the dates, numbers, and amounts of Envirocare's requests for payment under its contracts with the government. Plaintiffs stated that they had reviewed "all" of Envirocare's requests for payment during the pertinent period and that none disclosed any violations of Envirocare's contractual or regulatory obligations. Plaintiffs further alleged that each request for payment submitted during the pertinent time period was paid in full by the government. Finally, addressing the materiality requirement, Plaintiffs cited specific contractual provisions under which the government, had it been aware of the violations, may have refused or reduced payment to Envirocare. Plaintiffs also showed that the violations undercut the purpose of the contracts—the safe and permanent disposal of waste. Based on the contractual provisions, Plaintiffs contended that, had it been aware of the violations, the government may not have paid in full.

614 F.3d at 1169-70 (internal citations omitted).

Here, Plaintiffs have not alleged any specific instances in which Defendants violated

their contractual and statutory obligations.   They have not detailed the regulation or contractual provision violated, the dates on which the alleged violations occurred, or who participated in the activities.  Plaintiffs have not provided the dates, numbers, and amounts of Defendants' false requests for payment under their contracts with the government.  They have not cited specific contractual provisions under which the government, had it been aware of the alleged violations, may have refused or reduced payment to Defendants.  While the Court does not imply that allegations such as these are required in every case to state a certification claim, the absence here of *all* such allegations demonstrates the deficiency of Plaintiffs' Proposed Amended Complaint.

Regardless, even if, arguendo, Plaintiffs' Proposed Amended Complaint met the Rule 12(b)(6) standard, the Court cannot find on these allegations that Plaintiffs have met the heightened pleading standard of Rule 9(b), even when construing these allegations in a light most favorable to Plaintiffs.  *See Sikkenga*, 474 F.3d at 728 n.34.  Plaintiffs have not explained how the steering of patients was illegal under the False Claims Act (as opposed to potentially simply anti-competitive), and they have not provided allegations sufficient to state a claim regarding the alleged failure to disclose Defendants' financial interests to patients.

Accordingly, the Court **recommends** that the Motion to Amend [#82] be **denied** to the extent it seeks to amend this claim.

## C.     Claim Three

Under Claim Three, Plaintiffs assert that all Defendants violated the Colorado Medicaid False Claims Act ("CMFCA"), Colo. Rev. Stat. §§ 25.5-4-301 through 306. Plaintiffs assert that if Defendants are found to have submitted Medicare claims associated

with kickbacks, Defendants' submission of Medicaid claims related to the Medicare claims conduct described above constitutes a violation of the Colorado Antikickback statute. *Proposed Am. Compl.* [#82-1] ¶ 65.   Plaintiffs argue that a violation of the Colorado Antikickback Statute, attendant to the receipt of Medicaid payments, constitutes a violation of the CMFCA. *Id.* ¶ 66.  As a result of Defendants' violations, the State of Colorado has allegedly been damaged in an amount equal to its contribution paid for Medicaid benefits associated with the kickback claims. *Id.* ¶ 67.

Defendants argue that the Court lacks subject matter jurisdiction over this claim. *See Response* [#87] at 15-17; *Response* [#88] at 7-8.  Plaintiffs do not reply to this argument. *See generally Reply* [#89].  A private individual only has the right to assert an action under the CMFCA after the State of Colorado notifies the Court that the State declines to take over the action. *See* Colo. Rev. Stat. 25.5-4-306(2)(d)(II) ("Before the expiration of the sixty-day period . . . or any extensions obtained . . . , the state shall . . . [n]otify the court that it declines to take over the action, in which case the relator shall have the right to conduct the action."), 306(3)(c) ("If the state elects not to proceed with the action, the relator who initiated the action shall have the right to conduct the action. . . .").  Here, there is no allegation or evidence that the State of Colorado was ever notified of this action. *See* Colo. Rev. Stat. 25.5-4-306(b) ("A copy of the complaint and written disclosure of substantially all material evidence and information the relator possesses shall be served on the state pursuant to rule 4 of the Colorado rules of civil procedure.  The complaint shall be filed in camera, shall remain under seal for at least sixty days, and shall not be served on the defendant until the court so orders.  The state may elect to intervene and proceed with the action within sixty days after it receives both the complaint and the material evidence and

information."). Thus, the State of Colorado has not provided notification that it declines to take over the action, and accordingly, Plaintiffs lack standing to assert this claim, and the Court lacks subject matter jurisdiction to adjudicate this claim. *See* Colo. Rev. Stat. 25.5-4-306(2)(d)(II); *Summers v. Earth Island Inst.*, 555 U.S. 488, 492-493 (2009) (stating that standing is a threshold requirement and that without it the Court lacks jurisdiction).

Accordingly, the Court **recommends** that the Motion to Amend [#82] be **denied** to the extent it seeks to amend this claim.

### IV. Motions to Dismiss [#60, #62]

Given that the Court recommends that the Motion to Amend be denied in full on the basis of futility as to each claim asserted by Plaintiffs, the Motions to Dismiss the presently live Complaint [#1] remain pending. Review of the red-lined version of the Proposed Amended Complaint [#82-1] demonstrates that the differences between it and the original Complaint relate primarily to the addition of certain factual allegations. As discussed above, even with the additional allegations, Plaintiffs' claims do not meet the Fed. R. Civ. P. 12(b)(6) standard. Accordingly, the less-detailed allegations of the original Complaint are likewise insufficient. For the reasons addressed above regarding Plaintiffs' attempt to amend the Complaint, the Court concludes that they have failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Accordingly, the Court **recommends** that the Motions to Dismiss [#60, #62] be **GRANTED**.

### V. Conclusion

For the foregoing reasons,

IT IS HEREBY **RECOMMENDED** that the Motion to Amend [#82] be **DENIED** and

that the Motions to Dismiss [#60, #62] be **GRANTED**.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

DATED: February 23, 2016               BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge